**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JOHN PRICE,** | * | **CIVIL ACTION NO. 5:19-cv-01362** |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| | * | |
| **INTERNATIONAL PAPER** | * | |
| **COMPANY,** | * | |
| | * | |
| **Defendant.** | * | **MAGISTRATE JUDGE** |
| | * | **MARK L. HORNSBY** |

**************************************************

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

Respectfully submitted,

*/s/ Camille R. Bryant*
Magdalen Blessey Bickford (La. Bar No. 17472)
mbickford@mcglinchey.com
Camille R. Bryant (La. Bar No. 35063)
cbryant@mcglinchey.com
McGLINCHEY STAFFORD
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone:  (504) 586-1200
Facsimile:  (504) 596-2800

ATTORNEYS FOR DEFENDANT
INTERNATIONAL PAPER COMPANY

**Table of Contents**

**Page**

I. BACKGROUND ................................................................................................. 1

II. GOVERNING LEGAL STANDARD ............................................................. 8

III. LAW AND ARGUMENT ................................................................................ 9

    A. IP is entitled to summary judgment as a matter of law on Plaintiff's FMLA Claims. ............................................................................................................ 9

        1. Plaintiff is unable to establish a prima facie case of a prescriptive FMLA claim........................................................................................ 10

        2. Plaintiff is unable to establish a prima facie case of a proscriptive FMLA claim........................................................................................ 16

        3. Plaintiff was terminated for a legitimate, non-discriminatory reason. ............................................................................................... 18

        4. Plaintiff cannot prove that IP's stated reason for his termination was a pretext for retaliation........................................................... 19

    B. Plaintiff cannot establish the elements for a prima facie case of ADA discrimination. ........................................................................................... 20

    C. Plaintiff's has no viable state law claim against IP.................................. 22

        1. Plaintiff's state law claim fails as a matter of law. ................................. 22

        2. Plaintiff's state law claim also fails because IP's conduct was not "extreme and outrageous."........................................................... 23

IV. CONCLUSION............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acker v. General Motors*,
    853 F.3d 784 (5th Cir. 2017) ...................................................................10, 11, 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................8, 9

*Bacon v. Hennepin Cty. Med. Ctr*,
    550 F.3d 711 (8th Cir. 2008) ................................................................................11

*Beaudoin v. Hartford Accident & Indemnity Co.*,
    594 So.2d 1049 (La. App. 3 Cir. 1992) ................................................................24

*Caraway v. Emmanuel Baptist Church of Ruston, LA*,
    Civ. A. No. 3:19-00938, 2020 WL 5578970 (W.D. La. 2020)........................21, 22

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................9

*Chaffin v. John H. Carter Co., Inc.*,
    179 F.3d 316 (5th Cir. 1999) ................................................................................10

*Delaval v. PTech Drilling Tublars, LLC*,
    824 F.3d 476 (5th Cir. 2016) ................................................................................16

*Demarce v. Robinson Property Group Corp.*,
    642 Fed. Appx. 348 (5th Cir. 2016)......................................................................16

*Deus v. Allstate Insurance Co.*,
    15 F.3d 506 (5th Cir.), *cert. denied*, 513 U.S. 1014 (1994)...................................24

*DeVoss v. Sw. Airlines Co.*,
    903 F.3d 487 (5th Cir. 2018) ..........................................................................10, 19

*Duplantis v. Shell Offshore, Inc.*,
    948 F.2d 187 (5th Cir. 1991) ..................................................................................9

*EEOC v. Chevron Phillips Chem. Co., L.P.*,
    570 F.3d 606 (5th Cir. 2009) ................................................................................20

*Engstrom v. First Nat'l Bank of Eagle Lake*,
    47 F.3d 1459 (5th Cir. 1995) ..................................................................................9

*Greenwell v. State Farm Mut. Auto. Ins. Co.*,
   486 F.3d 840 (5th Cir. 2007) .........................................................................11, 12

*Grubb v. Southwest Airlines*,
   296 Fed. Appx. 383 (5th Cir. Tex. 2008).................................................................14

*Harrelson v. Lufin Industries, Inc.*,
   614 Fed. Appx. 761 (5th Cir. 2015)..................................................................16, 19

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ...................................................................................9

*Lottinger v. Shell Oil Co.*,
   143 F. Supp.2d 743 (S.D. Tex. 2001) ......................................................................19

*Maldonado v. Frio County*,
   2004 U.S. Dist. LEXIS 10723 (W.D. Tex., June 1, 2004)......................................14

*Manuel v. Westlake Polymers Corp.*,
   66 F.3d 758 (5th Cir. 1995) ....................................................................................11

*Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*,
   446 F.3d 574 (5th Cir. 2006). .....................................................................16, 17, 20

*McAnnally v. Wyn South Molded Products, Inc.*,
   912 F.Supp. 512 (N.D. Ala. 1996)...........................................................................22

*Okoye v. Univ. of Texas Houston Health Science Ctr.*,
   245 F.3d 507 (5th Cir. 2001) ...................................................................................17

*Park v. Stockstill Boat Rentals, Inc.*,
   492 F.3d 600 (5th Cir. 2007) .....................................................................................9

*Ramsey v. Henderson*,
   286 F.3d 264 (5th Cir. 2002) .....................................................................................9

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133, 120 S. Ct. 2007, 147 L.Ed.2d 105 (2000).........................................20

*Riggs v. DXP Enterprises, Inc.*,
   Civ. A. No. 6:18-cv-00729, 2019 WL 5682897 (Doughty, W.D. La.
   10/31/2019).................................................................................................................23

*Roberson-King v. Louisiana Workforce Commission*,
   No. 17-30899 (5th Cir. September 17, 2018) ...........................................................23

*Satterfield v. Wal-Mart Stores, Inc.*,
   135 F.3d 973 (5th Cir. 1998) ...................................................................................11

*Serio v. Jojo's Bakery Rest.*,
    102 F. Supp. 2d 1044 (S.D. Ind. 2000) ...................................................................14

*Spears v. Louisiana College*,
    Civ. A. No. 1:18-cv-00387, 2020 Wl 4280094 (W.D. La. 7/24/2020)............................21, 22

*St. Martin v. Quintana Petroleum Corp.*,
    No. 98-2095, 2000 WL 1760699 (E.D. La. Nov. 29, 2000) ......................................8

*Steadman v. South Central Bell Telephone Co.*,
    362 So.2d 1144 (La. App. 2 Cir. 1978) ...................................................................24

*Strong v. Univ. Healthcare*,
    482 F.3d 802 (5th Cir. 2007) ...................................................................18

*Succession of Harvey v. Dietzen*,
    1997-2815 (La. App. 4 Cir. 6/24/98), 716 So. 2d 911 ............................................23

*Thompson v. Lane*,
    2014 WL482622, M.D.L.A. September 30, 2014 ....................................................25

*Tisdale v. Woman's Hosp.*,
    2006 WL 1877271 (5th Cir. July 6, 2006)................................................................24

*Twigg v. Hawker Beechcraft Corp.*,
    659 F.3d 987 (10th Cir. 2011) ...................................................................11

*Viereck v. City of Gloucester*,
    961 F. Supp. 703 (D.N.J. 1997) ...................................................................11

*Wenner v. Texas Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997) ...................................................................8

*White v. Monsanto Co.*,
    585 So.2d 1205 (La. 1991) ...................................................................24, 25

*Williams v. Worldwide Flight SVCS., Inc.*,
    877 So. 2d 869 A.L.R.6th 831 (Fla. Dist. Ct. App. 3d Dist. 2004) ........................24

**Statutes**

29 U.S.C. § 2601(b)(1)(2)&(3) ...................................................................10

29 U.S.C. § 2612(a)(1)(D) ...................................................................10

29 U.S.C. § 2612 (e)(1)(2) ...................................................................10

29 U.S.C. § 2614(a)(1)(A)-(B) ...................................................................14

29 U.S.C. § 2615(a)(1) .................................................................................................10

42 U.S.C. § 12102 .......................................................................................................21

Federal Rules of Civil Procedure Rule 56 .............................................................8, 9

Louisiana Civil Code Article 2315 .......................................................................22, 23

**Other Authorities**

29 C.F.R. § 825.215(a)-(e) ..........................................................................................14

29 C.F.R. § 825.303 ...............................................................................................10, 11

Rule 56 ...........................................................................................................................8

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff, John "Milton" Price, filed this lawsuit against International Paper Company ("IP"), his former employer, alleging violations of the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and unspecified Louisiana state law. The discovery period is now over, and this case is ripe for disposition.[1] The *material* facts are undisputed, and the jurisprudence confirms, as a matter of law, that IP is entitled to judgment dismissing Plaintiff's claims.

## I.      <u>BACKGROUND</u>

IP is a global leader in packaging and paper with manufacturing operations worldwide.[2] IP operates a mill located in Mansfield, Louisiana ("Mansfield Mill" or "Mill").[3] Plaintiff was hired by IP in 2011 to work at the Mansfield Mill as a trainee.[4] The paper machines at the Mill are managed through what is known as a "control room," which houses the computer processing components of the paper machine.[5] The Control Room Operators manage the processing equipment, and there are other individuals who are on the ground doing the manual labor to ensure that the machine functions properly.[6] Plaintiff worked his way up from trainee to Wet-End Assistant. As a Wet-End Assistant, Plaintiff considered himself the "eyes and ears" of the control-room.[7] During his first few years at the Mill, Plaintiff had no serious disciplinary issues. He was regarded by his colleagues as a competent member and a hard worker.[8] However, later, Plaintiff developed an unsatisfactory practice of missing work in violation of the Attendance Policy and

---

[1] The Court's Scheduling Order set a discovery cutoff of December 29, 2020, with a jury trial scheduled to commence on June 14, 2021. *See* Rec. Doc. 16.
[2] Exhibit A, Price Dep. Exhibit 12.
[3] *Id.*
[4] Exhibit A, Price Depo 20-21.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Exhibit B, Woodall Depo 24; Exhibit G, Simpson Dep. 11.

"No Call/No Show" Policy. The Mansfield Mill has a no-fault Attendance Policy.[9] If an employee is sick and the illness is not covered by FMLA or Other Medical Leave ("OEM"), the absence counts as an "occurrence".[10]

Plaintiff's first attendance occurrence happened on January 16, 2014.[11] Three months later, on April 19, 2014, Plaintiff received his second attendance occurrence, and he incurred a third attendance occurrence on May 2, 2014.[12] Each of these attendance occurrences were received within a six month period.[13] The Mansfield Mill's Attendance Policy provides that:

> Attendance guidelines at the Mansfield Mill recommend that after a member has had two (2) occurrences in a rolling 12 month period, a member of leadership will review and discuss the occurrences with the member. If a member has three (3) or four (4) occurrences in a rolling 12 month period, depending on the leader's review of the circumstances, a guidance committee should meet with the member to discuss the concerns and recommend corrective action. Additional occurrences will result in additional corrective action, up to and including termination.[14]

In accordance with the policy, a Guidance Committee was commissioned to address Plaintiff's three (3) occurrences in a 12-month period.[15] The Guidance Committee met with Plaintiff to obtain his version of the facts, interviewed all witnesses, reviewed Plaintiff's previous corrective actions, and reviewed information from Human Resources regarding consistent actions taken across the Mill so that at all members are treated fairly. In this evaluation, the Guidance Committee recommended that Plaintiff receive informal coaching for his first two occurrences, and they also recommended that Plaintiff be placed on full restrictive rights[16] for having a third

---

[9] Exhibit D, Givens Dep. 20.
[10] Id.
[11] Exhibit K, Bates No. IP 000144.
[12] Id.
[13] Id.
[14] Exhibit A, Price Dep., Exhibit 12, Employee Handbook.
[15] Exhibit K, Bates No. IP 000144.
[16] Id. Exhibit 12, Employee handbook at 32: "A member's rights may be restricted when the member is not fulfilling the responsibilities of membership. In this case, the member is not fulfilling the responsibilities of membership, and therefore, may have their rights restricted. Restricted rights typically take one of two forms – full restricted rights or "hours worked." Full restricted rights means that someone is only paid for hours worked, will not be receiving gain

occurrence within a 12-month period.[17] These recommendations were sent to and approved by Human Resources and the Plant Manager.[18] The Guidance Committee form indicated that Plaintiff did not dispute the recommended corrective action.[19]

After being placed on full restrictive rights, Plaintiff's attendance issues subsided until June 21, 2017, when he was a no call/no show for a scheduled training day.[20]  A Guidance Committee recommended a written warning in its evaluation of the misconduct.[21] This was affirmed by Human Resources and Management, despite the leniency.[22] Plaintiff's attendance issues continued on November 28, 2017, when he called in sick and incurred another absence.[23] On December 22, 2017, Plaintiff also received an occurrence when he left work early because he was feeling ill.[24]

### Plaintiff's First FMLA Leave: December 25, 2017 – January 20, 2018

Plaintiff took FMLA leave on December 25, 2017.[25] Plaintiff was provided notice of his rights and responsibilities under the FMLA through the employee handbook, OSHA training, and Sedgwick paperwork, which included the notice form provided by the Department of Labor.[26] In the Employee Handbook, Plaintiff was notified that eligible employees can take up to 12 weeks of unpaid, job-protected FMLA leave for a multitude of reasons.[27] The handbook also advised Plaintiff that he could take leave intermittently or on a reduced schedule whenever medically

---

sharing or be eligible for promotion or transfer and may not serve on team or committees. In addition, a member who is on restricted rights may not appeal further corrective action to a Membership Rights Panel."
[17] Exhibit K, Bates No. IP 000144.
[18] Exhibit A, Price Dep. Exhibit 12.
[19] Exhibit K, Bates No. IP 000144.
[20] Exhibit K, Price 000205-000207; 000210-000212.
[21] *Id.*
[22] Exhibit B, Woodall Dep. 57.
[23] Exhibit K, IP 000188-189.
[24] *Id.*
[25] Exhibit A, Price Dep. 49 – 50; *see also* Exhibit C, Cylie Price Dep. 50 – 51; 110.
[26] Exhibit A, Price Dep. 126, 132 – 139; *see also* Exhibit C, Cylie Price Dep. 87, 106; Exhibit K, Price 000894, 000905, 000964-000965, 000636-000646; 000663-664; 000752-000782; 000809-000815; 000869-000870
[27] Exhibit A, Price Dep. Exhibit 12.

necessary.[28] Importantly, the handbook advised Plaintiff that he was responsible for cooperating with and timely providing requested information and paperwork to Sedgwick Claims Management, IP's third-party administrator.[29] When it was time for Plaintiff to take his first FMLA leave, his supervisor, John Simpson, advised him to call Sedgwick.[30]

After contacting Sedgwick, Plaintiff was notified of his reporting obligations. Specifically, Plaintiff was notified that failure to ensure that Sedgwick received the completed FMLA paperwork could result in a delay or denial of FMLA leave.[31] Plaintiff was also advised that if his claim for FMLA was denied, his absence could be counted as an unexcused absence under the Attendance Policy.[32] Plaintiff was directed to contact the Mill with any questions about how unexcused absences were treated under Mill policy.[33] After receiving notice of his rights, Plaintiff was approved for his first FMLA leave. He took leave without incident. When he was released to work, he returned to work in his same position.[34]

### _Continued Attendance Issues_

After returning from his first FMLA leave, Plaintiff's attendance issues persisted. On February 21, 2018, he received an unexcused absence.[35] On April 13, 2018, he again left work early, and he was cited for an attendance violation.[36] On April 24, 2018, he was a no call/no show after he failed to appear for a critical safety training.[37] A Guidance Committee was held to review Plaintiff's persistent attendance issues. He was issued a final warning in lieu of a suspension for

---

[28] _Id._
[29] _Id._
[30] Exhibit A, Price Dep. 132 – 139.
[31] Exhibit A, Price Dep. Exhibit 11.
[32] _Id._
[33] _Id._
[34] Exhibit A, Price Dep. 49 – 50; _see also_ Exhibit C, Cylie Price Dep. 50 – 51; 110.
[35] Exhibit K, Price Dep. 000372-000374.
[36] _Id._
[37] _Id._

his no call/no show violation, and he was issued a coaching for his five (5) attendance occurrences within a rolling 12-month period.[38] This was very lenient.[39] Plaintiff had no comments at this Guidance Committee meeting, and he signed the form acknowledging his attendance issues and the Guidance Committee's recommendation.[40] The Guidance Committee's recommendation was accepted, and Human Resources issued a corrective action letter on May 10, 2018.[41] In the letter, Plaintiff was advised that any future attendance issue or no call/no show would likely result in termination.[42] Plaintiff was entitled to appeal this discipline, but he did not.

### Plaintiff's Second FMLA Leave: May 8, 2018 – July 16, 2018

Plaintiff left his shift because he felt ill on May 8, 2018. He filed a claim with Sedgwick and started his FMLA leave that same day.[43] Plaintiff's intermittent leave ended on July 16, 2018, and he returned to work in his same position.[44] On July 20, 2018, Plaintiff again left work early and he incurred another unexcused absence.[45] This absence was not FMLA protected.

### Plaintiff's Third FMLA Leave and Return to Work

Plaintiff submitted a third FMLA claim on July 23, 2018, which was granted.[46] He returned to work on August 6, 2018.[47] Upon his return to work,[48] Plaintiff's supervisors asked him if he had been cleared to work and for a copy of his return to work release.[49] Plaintiff did not have a

---

[38] *Id.*
[39] Exhibit B, Woodall Dep. 57.
[40] Exhibit K, Price Dep. 000372-000374.
[41] Exhibit K, Price 000193.
[42] *Id.*
[43] Exhibit A, Price Dep. 50:6 – 21; *see also* Exhibit C, Cylie Price Dep. 51 – 52; 110.
[44] *Id.*
[45] Exhibit A, Price Dep. Exhibit 9.
[46] Exhibit A, Price Dep. Exhibit 6
[47] Exhibit C, Cylie Price Dep. 110; see also Exhibit A, Price Dep. Exhibit 7.
[48] There is some dispute regarding whether plaintiff returned to work on August 6th or 7th, 2018. For purposes of Motion for Summary Judgment, this fact is not material. Plaintiff left work to get a return to work release on either day, and he did not bring the release back until the following day, which resulted in an attendance occurrence pursuant to IP's Attendance Policy.
[49] Exhibit E, Deas Dep. 31-32 and Exhibit 21 *see also* Exhibit G, Simpson Dep. 28-31.

return to work release,[50] so his supervisors told him to leave and obtain a return to work release.[51]

He was advised that the release should be returned to the EMT's ("Emergency Medical Technician") office in accordance with IP's policy, which states:

> Return from Leave
>
> Once you are ready to return to work, please notify Sedgwick and your local Human Resources representative or supervisor (pursuant to your local policy). Also, if you are on leave of absence due to your own serious health condition, the enclosed Fitness-For-Duty-Certification form should be completed by your physician or practitioners. Please return this form to your local human resources representative – or supervisor upon your return to work from a leave due to your own serious health condition.[52]
>
> *****
>
> Return to Work Policy
>
> When returning to work from an absence of three (3) or more days, you will need to provide a doctor's release to the EMTs prior to reporting to your area. If you need to be absent for more than five (5) days for medical reasons, you will need to file for FMLA or other applicable medical leave by calling the ESC to initiate a claim. Any time out after five (5) days will not be paid unless salary continuance is filed and approved.[53]

It is undisputed that Plaintiff did not bring a doctor's release or a fitness for duty certification upon his return to work.[54] Plaintiff left work at the beginning of his 12-hour shift to get the release as instructed by his supervisors.[55] Plaintiff, however, never returned that day. He was gone for approximately 10 hours and 45 minutes.[56] Because Plaintiff was scheduled to work

---

[50] *Id.*
[51] *Id.*
[52] Exhibit A, Price Dep. Exhibit 11.
[53] Exhibit A, Price Dep. Exhibit 12.
[54] Exhibit A, Price Dep. 145-146
[55] Exhibit C, Cylie Price Dep. 74-77 and Exhibit 19; *see also* Price Dep. Exhibit 4.
[56] Exhibit C, Cylie Price Dep. 74-77 and Exhibit 19; *see also* Price Dep. Exhibit 4.

that day, and he failed to report back to his twelve hour shift, he was assessed with an unexcused absence.[57] This incident was Plaintiff's seventh occurrence within a 12-month period.[58]

*Plaintiff's Termination*

Plaintiff returned to work on August 8, 2018, with the return to work form. Plaintiff was asked why he did not come back to work or call, and he stated that it took him all day to get the doctor's note.[59] A Guidance Committee convened on August 24, 2018, to discuss Plaintiff's seven attendance occurrences within a 12-month period.[60]

- 11/28/2017 – Sick
- 12/22/2017 – Unexcused Absence (Left 6 hrs and 30 mins early)
- 7/21/2018 – Unexcused Absence
- 4/13/2018 – Unexcused Absence (Left work early)
- 4/24/2018 – No Call/No Show
- 7/20/2018 – Unexcused Absence (Left 4 hours early)
- 8/07/2018 – Unexcused Absence (Left 10 hrs 45 mins early)

During the Guidance Committee meeting, Plaintiff was given an opportunity to explain his absences, but instead, he told the committee that his wife would handle everything.[61] Because Plaintiff did not offer any explanation for his absences, the Guidance Committee recommended termination, which was consistent with how similarly situated employees were disciplined.[62] The recommendation was submitted to Human Resources, which reviewed all of Plaintiff's FMLA claims to confirm that no attendance occurrences were covered by his FMLA leave.[63] The Guidance Committee's recommendation was upheld. Plaintiff was contacted by Human Resources regarding the decision and sent a termination letter on August 30, 2018.[64] Plaintiff was advised of

---

[57] Exhibit D, Givens Dep. 20.
[58] Exhibit 9, Price Dep. Exhibit 9.
[59] Exhibit A, Price Dep. 152-156.
[60] Exhibit A, Price Dep. Exhibit 9.
[61] Exhibit B, Woodall Dep. 64.
[62] Exhibit A, Price Dep. Exhibit 9.
[63] Exhibit D, Givens Dep. 91-92.
[64] Exhibit A, Price Dep. Exhibit 8.

his right to appeal.[65] Plaintiff initially indicated that he would appeal the termination decision, but he later indicated that he did not want to appeal because he did not want his job back.[66]

Despite counseling, Plaintiff was disciplined seven times for his attendance and no call/no violations.[67] Plaintiff's behavior of missing an entire day of work in August 2018, without calling his supervisors, was the last straw. Despite Plaintiff's repeated attendance policy violations, he filed this lawsuit alleging that IP discriminated and retaliated against him for taking and requesting FMLA leave and because he suffered from a disability. Plaintiff's allegations are without merit, and this matter should be dismissed with prejudice.

## II.     GOVERNING LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that "a party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense on which summary judgment is sought." [68] Summary judgment shall be granted under Rule 56 if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [69] A "material fact" is one that might affect the outcome of an action under governing law.[70] "[A] genuine dispute about a material fact exists when the evidence presented on summary judgment is such that a reasonable jury could find in favor of the non-moving party." [71]

The moving party bears the initial burden of proving that no "genuine dispute" regarding a material fact exists for trial, but the movant need not negate all elements of the non-movant's

---

[65] *Id.*
[66] Exhibit A, Price Dep. 121-123; *see also* Givens Dep. 47-48.
[67] Exhibit A, Price Dep. Exhibit 9.
[68] Fed. R. Civ. P. 56(a); *see also St. Martin v. Quintana Petroleum Corp.*, No. 98-2095, 2000 WL 1760699, at *2 (E.D. La. Nov. 29, 2000) ("Partial summary judgment dismissing only certain claims is appropriate under" Rule 56).
[69] Fed. R. Civ. P. 56; *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997).
[70] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[71] *Id*. at 248.

case.[72] Where, as here, the non-movant bears the burden of proof at trial, the movant may submit summary judgment evidence that negates the existence of some material element of the opponent's claim or defense.[73] Once the movant satisfies its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate.[74] The non-moving party may then satisfy its burden by producing evidence or designating specific facts showing the existence of a genuine issue for trial.[75] Thereafter, summary judgment should be granted if the non-movant cannot establish an essential element of his case.[76] "The mere existence of a scintilla of evidence in support of the . . . [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."[77] Bare denials, unsupported statements of fact, and allegations in pleadings cannot establish a genuine issue for trial.[78] Similarly, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden.[79]

## III.   LAW AND ARGUMENT

Plaintiff asserts six claims in his Complaint against IP: (1) that IP failed to provide him with his rights under the FMLA; (2) that IP interfered with his rights under the FMLA; (3) that IP failed to reinstate him following his FMLA leave; (4) that IP retaliated against him for requesting and taking FMLA leave; (5) that IP discriminated against him in violation of the ADA; and (6) that IP caused him "emotional distress."

### A.   IP is entitled to summary judgment as a matter of law on Plaintiff's FMLA Claims.

---

[72] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[73] *Celotex*, 477 U.S. at 330; *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).
[74] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[75] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[76] *Celotex*, 477 U.S. at 322.
[77] *Anderson*, 477 U.S. at 252.
[78] *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 605 (5th Cir. 2007).
[79] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

9

The FMLA was enacted to permit employees to take reasonable leave for serious health conditions while accommodating the legitimate interests of employers.[80] The FMLA contains two distinct provisions to achieve its purpose. First, it allows eligible employees working for covered employers to take a total of twelve weeks of leave during any twelve-month period for certain enumerated reasons without fear of losing their jobs.[81] Second, it protects employees against retaliation for exercising their rights under the FMLA.[82] An aggrieved employee may bring actions against their employer for violating their substantive FMLA rights (prescriptive claim) or for retaliating against them for invoking their FMLA rights (proscriptive claim).[83]

### 1.   Plaintiff is unable to establish a *prima facie* case of a prescriptive FMLA claim.

Plaintiff contends that IP interfered with, restrained, and/or denied his right to FMLA by terminating his employment. Plaintiff bears the burden of proving that: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him benefits to which he was entitled."[84] Turning to the present case, Plaintiff cannot establish the fourth and fifth prongs of the *prima facie* case.

### (a)   Plaintiff failed to provide IP with proper notice of his intention to take leave.

While an employee has a right to take leave under FMLA, the employee must give his employer notice of his intention to take leave.[85] Under the FMLA, an employee is supposed to

---

[80] 29 U.S.C. § 2601(b)(1)(2)&(3).
[81] 29 U.S.C. § 2612(a)(1)(D); 29 U.S.C. § 2615(a)(1).
[82] 29 U.S.C. § 2615(a)(2).
[83] *See Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999).
[84] *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018).
[85] *Acker v. General Motors*, 853 F.3d 784, 789 (5th Cir. 2017); *see also* 29 U.S.C. § 2612 (e)(1)(2)(requirement of notice and duties of employee) and 29 C.F.R. § 825.303.

provide 30 days' notice of the need for the leave.[86] When this is not possible, the employee should provide sufficient information to allow an employer to determine whether the FMLA applies.[87] This notice requirement applies to both continuous and intermittent leave.[88]

In *Acker v. General Motors*, the Fifth Circuit held that the FMLA and accompanying regulations require employees to follow their employer's "usual and customary" procedures for requesting FMLA intermittent leave, absent unusual circumstances.[89] The facts considered by the Fifth Circuit in *Acker* are very similar to those presented by Plaintiff. The Plaintiff in *Acker* worked for General Motors ("GM"), which maintained an attendance policy that provided that each unexcused absence was considered an "instance." Employees were only permitted up to five (5) "instances" before being subject to discipline.[90] Even more compelling is that GM also used Sedgwick, the same third party administrator as IP, to manage its FMLA leaves.[91] In *Acker*, the Plaintiff failed to properly or timely report absences he considered to be covered by his intermittent leave. The Fifth Circuit held that an employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, even if the absences that the employee failed to report were protected by the FMLA.[92]

Similarly in *Greenwell v. State Farm Mut. Auto. Ins. Co.*, the employee claimed that the employer had interfered with her FMLA rights by terminating her employment for unauthorized

---

[86] *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 975 (5th Cir. 1998).

[87] *Id.*; *see also Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir. 1995); *Viereck v. City of Gloucester*, 961 F. Supp. 703 (D.N.J. 1997) ("The employee must specifically reference either the qualifying reason for leave or the need for FMLA Leave. "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. §825.303(b) (2009)).

[88] *Id.*

[89] *Acker*, 853 F.3d at 789.

[90] *Acker*, 853 F.3d at 787-88.

[91] *Acker*, 853 F.3d at 787-88.

[92] *Id.* (citing *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011); *see also Bacon v. Hennepin Cty. Med. Ctr*, 550 F.3d 711, 715 (8th Cir. 2008) ("Employers who enforce [call-in] policies by firing employees on FMLA leave for non-compliance do not violate the FMLA.").

absences.[93] The Fifth Circuit affirmed the district court's grant of summary judgment for the employer because the employee had failed to give adequate notice that the absence was covered by the FMLA. When the employee called in to state that she would be absent, she merely stated that her son had an accident. When she returned to work on the following day, the employer asked her to provide documentation to establish that this absence was covered by the FMLA. The employee did not submit the documentation. Under these circumstances, the Fifth Circuit concluded that the employee did not comply with the notice requirements of the FMLA and did not qualify for FMLA protection.

In this case, as in *Acker* and *Greenwell*, it is undisputed that the basis for Plaintiff's termination was his unexcused absences. IP maintains a no fault attendance policy, meaning that each absence that is not FMLA approved is an "occurrence." This includes when an employee leaves a shift early.[94] Consequently, when Plaintiff called into work on November 28, 2017, this was an occurrence because it was not approved for FMLA. Similarly, Plaintiff's other non-FMLA approved absences on December 12, 2017, February 2, 2017, April 13, 2018, April 24, 2018, July 20, 2018, and August 7, 2018, were counted as occurrences under the attendance policy.

Plaintiff alleges that certain absences in the above occurrences should have been covered by FMLA. Plaintiff, however, failed to properly or timely report absences he considered to be covered by his intermittent leave. IP has mechanisms in place to appeal Guidance Committee recommendations and employee discipline. Plaintiff, however, did not contest any of the absences, which he now claims should have been counted towards his FMLA leave. Plaintiff had an opportunity as part of the Guidance Committee process to voice opposition to his correction action, and he failed to do so. As part of his May 10, 2018, corrective action, Plaintiff was clearly advised

---

[93] *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840 (5th Cir. 2007).
[94] Exhibit D, Givens Dep. 20.

that any future attendance issue or no call/no show would likely result in termination.[95] His one attempt to seek relief from an appeal panel was scheduled for May 25, 2018. Plaintiff elected to withdraw this appeal, and he did not request that it be rescheduled. As a result, Plaintiff never challenged the validity of these unexcused absences, and IP had no reason to believe that they should have been covered by the FMLA.

Further, Plaintiff failed to timely notify Sedgwick of his intermittent absences in violation of Sedgwick's call-in procedure, which contributed to him accumulating numerous attendance occurrences in violation of IP's Attendance Policy. Plaintiff was aware of the requirements of the IP Attendance Policy and the Sedgwick FMLA call-in procedures, yet he failed to comply with those requirements. This competent summary judgment evidence, including Plaintiff's own sworn testimony, establishes that Plaintiff is unable to prove the fourth prong of his prima facie case – *i.e.*, that he gave IP proper notice of his intention to take FMLA leave. Therefore, IP is entitled to summary judgment as a matter of law on Plaintiff's claim that IP interfered with, restrained, or denied him rights provided by FMLA.

---

[95] Exhibit K, Price Dep. 000372-000374.

**(b)     Plaintiff was not denied benefits to which he was entitled under FMLA.**

Plaintiff alleges that he was denied benefits because IP failed to reinstate him to his position following his FMLA leave. Under the FMLA, employees who take protected leave are entitled, upon their return, "to be restored ... to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[96] An equivalent position is one that is "virtually identical" to the employee's former position in terms of conditions, privileges, duties, and responsibilities.[97]

An employee who requests or takes leave under the FMLA is not entitled to any greater rights or benefits than the employee would be entitled to had he not requested or taken leave.[98] In other words, an employer is entitled to dismiss an employee for any lawful reason at any time, whether before, during, or after an employee requests or takes leave pursuant to the FMLA, as long as the employer does not discriminate or retaliate against the employee for requesting or taking such leave.[99] Therefore, an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.[100]

Here, the undisputed facts demonstrate that after each FMLA leave, Plaintiff was reinstated to his same position.[101] Plaintiff's first FMLA request was granted, and he took leave from

---

[96] 29 U.S.C. § 2614(a)(1)(A)-(B).
[97] 29 C.F.R. § 825.215(a)-(e).
[98] *See e.g., Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 388-391 (5th Cir. Tex. 2008) (citing *Serio v. Jojo's Bakery Rest.*, 102 F. Supp. 2d 1044, 1051 (S.D. Ind. 2000)).
[99] *Maldonado v. Frio County*, 2004 U.S. Dist. LEXIS 10723, * 11 (W.D. Tex., June 1, 2004) (citing Serio, 102 F. Supp. 2d 1044).
[100] Grubb, 296 Fed. Appx. 383, 388-391.
[101] Exhibit A, Price Dep. 148-150.

December 25, 2017, until January 20, 2018.[102] Plaintiff testified that he was reinstated in his same

position following his leave.[103] Plaintiff then requested and was granted a second FMLA request

from May 8, 2018, to July 16, 2018.[104] Plaintiff again testified that he was reinstated after his

leave.[105] Plaintiff requested and was granted a third FMLA request on July 23, 2018.[106] Plaintiff

testified that he returned from this leave on July 6, 2018 and that he worked for IP in his position

until August 24, 2018:

> Q.     But you worked for IP from the day you returned back to work after that last FMLA leave until you went to the guidance committee; right?
> A.     I believe so.  I believe.
> Q.     So you were reinstated to your position after August 6th; correct?
> A.     I never was terminated at the 6th.
> Q.     Correct.  You worked?
> A.     Yeah, I worked.
> Q.     Okay.  We can agree on that?
> A.     Yes.[107]

Plaintiff's testimony clearly demonstrates that he was reinstated to his same position

following each of his FMLA leaves. Therefore, he was not denied any benefit for which he was

entitled. Plaintiff is unable to prove the fifth prong of his *prima facie* case – *i.e.*, that he was denied

benefits to which she was entitled under the FMLA. Therefore, IP is entitled to summary judgment

as a matter of law on Plaintiff's claim that IP interfered with, restrained, or denied Plaintiff's rights

provided by the FMLA.

---

[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] Exhibit A, Price Dep. 150

### 2.     Plaintiff is unable to establish a *prima facie* case of a proscriptive FMLA claim.

Plaintiff claims that IP violated his proscriptive rights under the FMLA. Specifically, Plaintiff alleges that IP retaliated against him for requesting and taking FMLA leave. Plaintiff lacks direct evidence of FMLA discrimination or retaliation. Thus, the *McDonnell Douglas* burden-shifting framework applies.[108] The plaintiff bears the initial burden to establish a *prima facie* case of retaliation under the FMLA.[109] To establish a *prima facie* case under the FMLA, a plaintiff must show: "(1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse action was made because he sought protection under the FMLA."[110] Once the plaintiff has established a *prima facie* case of retaliation, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action.[111] The burden then shifts back to the employee to prove that the stated reason is merely a pretext for illegal discrimination.[112] For purposes of summary judgment only, IP concedes that Plaintiff can establish the first and second prongs of his *prima facie* case. However, Plaintiff cannot establish the third prong of his *prima facie* case. Specifically, Plaintiff cannot establish that he was treated less favorably than an employee who had not requested leave or that his termination was because he sought protection under the FMLA.

As set forth above, Plaintiff was terminated for violation of IP's uniformly applied Attendance Policy. Plaintiff cannot establish that the decision to terminate his employment was

---

[108] *See Harrelson v. Lufin Industries, Inc.,* 614 Fed. Appx. 761, 763 (5th Cir. 2015); *Delaval v. PTech Drilling Tublars, LLC,* 824 F.3d 476, 479 (5th Cir. 2016); *Demarce v. Robinson Property Group Corp.,* 642 Fed. Appx. 348 (5th Cir. 2016).
[109] *Id.*
[110] *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.,* 446 F.3d 574 (5th Cir. 2006).
[111] *Id.*
[112] *Id.*

made because he sought protection under the FMLA. To establish that he was treated less favorably, Plaintiff would have to show that IP "gave preferential treatment to another employee under 'nearly identical' circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees [who had not requested FMLA leave and were not discharged]."[113] Plaintiff has failed to present evidence that he was treated less favorably than someone who had not requested FMLA leave or that either Sedgwick or IP was inconsistent in the application of the FMLA and Attendance Policy procedures. In fact, Plaintiff was treated more favorably than other employees because he bypassed certain company policies with respect to having a return to work release, and he was given a lesser penalty for some of his transgressions.[114] Each of the IP employees who testified in this matter stated that it is IP's policy to require a return to work slip and that this is widely known amongst all employees.[115] Therefore, to survive summary judgment, Plaintiff must establish that the decision to terminate him was made because he sought protection under the FMLA. Again, Plaintiff cannot meet his evidentiary burden.

While Plaintiff cannot demonstrate how his termination was caused by his request to take FMLA leave instead of his violation of IP's Attendance Policy, Plaintiff will likely argue that he can establish his *prima facie* case based on temporal proximity. When evaluating whether the adverse employment action was causally related to the FMLA protection, courts can consider the "temporal proximity" between the FMLA leave and the termination.[116] However, the Fifth Circuit has noted that "to prevent future litigants from relying on temporal proximity alone to establish

---

[113] *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001).
[114] Exhibit B, Woodall Dep. 32-33; Exhibit D, Givens Dep. 49.
[115] Exhibit F, Perot Dep. 11; *see also* Exhibit H, Craig Dep. 34-36; Exhibit E, Deas Dep. 31-32 and Exhibit 21; Exhibit G, Simpson Dep 40; Exhibit B, Woodall Depo 69; 73.
[116] *See e.g.*, *Mauder*, 446 F.3d at 583.

but for causation, we once again attempt to clarify the issue...we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.... Such a rule would unnecessarily tie the hands of employers..."[117] Like the plaintiff in *Strong*, Plaintiff's only "evidence" of retaliation is temporal proximity; namely, that his termination was finalized on August 24, 2018. For the reasons set forth above, Plaintiff's reliance on temporal proximity alone is insufficient to establish a prima face case of FMLA discrimination. Because Plaintiff cannot show that his termination is related to his request for FMLA leave, IP is entitled to summary judgment as a matter of law.

### 3. Plaintiff was terminated for a legitimate, non-discriminatory reason.

Even if Plaintiff establishes a *prima facie* case, which he cannot, Plaintiff's claims will ultimately fail, and IP is entitled to summary judgment because the competent summary judgment evidence establishes that Plaintiff was terminated for a legitimate, non-discriminatory reason. Moreover, Plaintiff cannot point to any competent summary judgment evidence to establish a question as to the veracity of IP's stated reason for his termination. Plaintiff cannot dispute that he was terminated for repeated violations of the Attendance Policy. Plaintiff failed to timely notify Sedgwick of his intermittent absences in violation of Sedgwick's call-in procedure, which contributed to Plaintiff accumulating numerous attendance occurrences in violation of IP's Attendance Policy. Plaintiff was provided with notice of the requirements of the IP Attendance Policy and the Sedgwick FMLA call-in procedures, and wholly failed to comply with those requirements. Plaintiff also incurred 7 attendance occurrences in violation of IP's Attendance Policy. Because Plaintiff cannot present any competent summary judgment evidence that IP's

---

[117] *Strong v. Univ. Healthcare*, 482 F.3d 802, 807-09 (5th Cir. 2007).

legitimate and non-discriminatory reason for his termination is a pretext for retaliation on the basis of requesting FMLA leave, IP is entitled to summary judgment as a matter of law.

### 4.      Plaintiff cannot prove that IP's stated reason for his termination was a pretext for retaliation.

Because IP has offered a legitimate non-discriminatory reason for his termination, the burden shifts to Plaintiff to demonstrate that the stated reason was merely a pretext for retaliation.[118] "A plaintiff may establish pretext either through (1) evidence of disparate treatment or (2) by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[119] However, "[a plaintiff] cannot establish pretext solely by relying on [his] subjective belief that unlawful conduct occurred."[120]

The only evidence that Plaintiff has offered in support of his argument that IP's proffered reason for his termination was pretextual is his own self-serving testimony that Joe Woodall was "out to get him."[121] Joe Woodall was not Plaintiff's direct supervisor, and he had no authority to terminate Plaintiff's employment.[122] On occasions when the first line leader, John Simpson, was absent, Joe Woodall would fill in. Plaintiff claims that when Joe Woodall filled in as supervisor, he also reprimanded Plaintiff. When asked if he had any evidence that Joe Woodall spoke adversely about him taking FMLA leave, Plaintiff stated, "I don't have any evidence."[123] Plaintiff also testified that he never disagreed with Joe Woodall about FMLA. Rather, Plaintiff claims that he "didn't get along with him, period, ever," and that it did not have to do with FMLA.[124] Plaintiff

---

[118] *Harrelson v. Lufkin Industries, Inc.*, 614 Fed. Appx. 763.
[119] *See, DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018).
[120] *DeVoss*, 903 F.3d at 492; *Lottinger v. Shell Oil Co.*, 143 F. Supp.2d 743, 775 (S.D. Tex. 2001) (explaining "[i]t is well established . . . that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief" and collecting Fifth Circuit cases).
[121] Exhibit C, Cylie Price Dep. 61:17-19.
[122] Exhibit A, Price Depo 87: 19 – 21.
[123] Exhibit A, Price Dep. 245
[124] *Id.*

explained that their differences occurred because "he's an A-hole and I'm an A-hole, so we didn't click well." Plaintiff also described himself as a "smart ass" and a bad jerk.[125]

By contrast, there is no dispute concerning the facts supporting IP's proffered reason for termination. Plaintiff freely admits that his direct supervisor John Simpson was supportive of him taking FMLA leave.[126] Plaintiff also admits that every time he requested FMLA leave, he was granted leave, and he was returned to work in his same position. The Fifth Circuit has held, "if the plaintiff created only a weak inference of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination had occurred a court should not find that the plaintiff has successfully proven retaliation."[127] Even presuming the incidents cited by Plaintiff could create a weak inference as to whether the reason for termination was untrue, there is abundant and uncontroverted independent evidence, including Plaintiff's own testimony, that the basis for his termination was valid. Plaintiff's claims for retaliation under the FMLA must therefore be dismissed.

### B.   Plaintiff cannot establish the elements for a prima facie case of ADA discrimination.

A discrimination action under the ADA is covered by the burden-shifting standard established by *McDonnell Douglas*. Absent direct evidence of discrimination, a plaintiff, under *McDonnell Douglas*, must make a *prima facie* case of discrimination by showing that he (1) has a disability, was regarded as disabled, or has a record of disability; (2) was qualified for the job; (3) was subjected to adverse employment decision on account of his disability, and (4) he was replaced by or treated less favorably than non-disabled employees.[128] In cases of alleged failure to

---

[125] Exhibit A, Price Dep. 79, 83.
[126] Interestingly, both John Simpson and Joe Woodall took FMLA themselves on multiple occasions and were not subject to discipline for these leaves.
[127] *Mauder*, 446 F.3d at 584 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2007, 147 L.Ed.2d 105 (2000)).
[128] *EEOC v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009).

accommodate under the ADA, a plaintiff must establish that (1) he is a qualified individual with a disability; (2) the disability was known by the employer; and (3) that the employer failed to make a reasonable accommodation for such known limitations. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Last year, in *Caraway v. Emmanuel Baptist Church of Ruston*, this Honorable Court held that a plaintiff who was diagnosed with peripheral edema, rheumatoid arthritis, and high blood pressure did not suffer from a disability.[129] In *Caraway*, the plaintiff's doctors filled out medical evaluations showing that Caraway was able to work. This court noted that the plaintiff did not have any work restrictions. Because there was no medical evidence that the plaintiff was unable to perform the tasks associated with most peoples' daily lives, it was determined that she did not have a disability, and summary judgment was awarded.

This Honorable Court also granted summary judgment last year in *Spears v. Louisiana College*[130] after holding that Spears did not establish that she suffered from a disability. Although Spears was treated for cancer, she did not assert that she was disabled then, and she testified that she did not have a disability at the time she was terminated.

---

[129] *Caraway v. Emmanuel Baptist Church of Ruston, LA*, Civ. A. No. 3:19-00938, 2020 WL 5578970 (W.D. La. 2020)
[130] *Spears v. Louisiana College*, Civ. A. No. 1:18-cv-00387, 2020 Wl 4280094 (W.D. La. 7/24/2020)

Similar to *Caraway* and *Spears*, the Plaintiff here does not suffer from a known disability.[131] At all times during his employment at IP, Plaintiff was cleared to work.[132] Plaintiff also testified that after he left employment at IP, he "went to work right after."[133] Plaintiff also unequivocally testified that he is not disabled and that he has no physical or mental limitations.

> Q. Any other physical limitations?
> A. No.
> Q. Any other mental limitations?
> A. No.
> Q. Is there anything stopping you from working at this time?
> A. No.
> Q. [Y]ou've been able to physically work since you left IP; correct?
> A. I am working.[134]

Based on Plaintiff's own testimony and the medical records, there is no evidence that Plaintiff suffers from a disability. The record is also devoid of any evidence that IP terminated plaintiff because of his alleged disability. IP should be entitled to summary judgment on this claim.

### C.   Plaintiff's has no viable state law claim against IP.

#### 1.   Plaintiff's state law claim fails as a matter of law.

In Paragraphs 29 and 30 of the Complaint, Plaintiff appears to be asserting a claim for emotional distress. To the extent that Plaintiff seeks to recover emotional distress damages under the FMLA, this remedy is unavailable under the Act.[135] To the extent that Plaintiff is alleging a state law tort claim for Intentional Infliction of Emotional Distress ("IIED") stemming from his termination from IP, this is also prohibited.[136]

---

[131] Exhibit A, Price Depo 14-15.
[132] *Id.*
[133] *Id.*
[134] Exhibit A, Price Depo 15.
[135] *McAnnally v. Wyn South Molded Products, Inc.,* 912 F.Supp. 512, 513 (N.D. Ala. 1996).
[136] Plaintiff's Complaint fails to reference any specific Louisiana statute for the source of recovery for emotional distress.  It is assumed that this claim arises from Louisiana Civil Code Article 2315 for purposes of this motion.

In *Roberson-King v. Louisiana Workforce Commission,* the plaintiff filed suit in the U.S. District Court for the Western District of Louisiana, alleging race discrimination in violation of Title VII and Louisiana Civil Code Article 2315. The employer filed a motion to dismiss the plaintiff's state law claims, arguing that she could not sue for a tort claim under Article 2315 while also suing under a more specific anti-discrimination statute. On appeal, the Fifth Circuit held that the Louisiana Employment Discrimination Law is the exclusive statutory basis for an employment discrimination case under Louisiana law.[137] The *Roberson* case completely forecloses tort law as a basis for an employment discrimination claim.

Plaintiff's IIED claim is also prescribed. Plaintiff's IIED claim is governed by Louisiana Code of Civil Procedure article 3492's one year prescriptive period. An IIED claim accrues on the date the conduct allegedly occurred. In this case, all of the acts that Plaintiff claims caused him to suffer severe emotional distress occurred because of his termination from employment with IP on August 30, 2018. Plaintiff's complaint was not filed until October 17, 2019, which is more than one year after his termination of employment and the applicable prescriptive period. *See Riggs v. DXP Enterprises, Inc*., Civ. A. No. 6:18-cv-00729, 2019 WL 5682897 (Doughty, W.D. La. 10/31/2019) (Granting summary judgment on the plaintiff's IIED claim that was filed more than one year after the plaintiff's termination from employment).

### 2.      Plaintiff's state law claim also fails because IP's conduct was not "extreme and outrageous."

Even if Plaintiff's claim was viable as a matter of law, which IP disputes, Plaintiff cannot recover for IIED unless such emotional distress flows from a separate cause of action.[138] To recover for the tort of IIED, a plaintiff must establish that: (1) the conduct of the defendant was

---

[137] *Roberson-King v. Louisiana Workforce Commission,* No. 17-30899 (5th Cir. September 17, 2018).
[138] *Succession of Harvey v. Dietzen*, 1997-2815 (La. App. 4 Cir. 6/24/98), 716 So. 2d 911, 916.

extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the

defendant desired to inflict severe emotional distress or knew that severe emotional distress would

be certain to result from his conduct.[139] "Extreme and outrageous conduct" has been identified by

Louisiana courts as "conduct so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

community."[140]

> In *White v. Montsano*, the Louisiana Supreme Court recognized that:

> Liability does not extend to mere insults, indignities, threats, annoyances, petty
> oppression, or other trivialities.  Persons must necessarily be expected to be
> hardened to a certain amount of rough language, and to occasional acts that are
> definitely inconsiderate and unkind.  Not every verbal encounter may be converted
> into a tort; on the contrary, 'some safety valve must be left through which irascible
> tempers may blow-off relatively harmless steam.'[141]

> The Louisiana Supreme Court in *White* also made it clear that even illegal discriminatory

conduct, such as a blatant ethnic slur, is usually insufficient to reach the level of outrageousness

necessary to state a claim for intentional infliction of emotional distress.[142] "[T]he mere fact that

the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt,

is not enough."[143] Furthermore, under Louisiana law, "the termination of an at-will employee, even

one with a long tenure, does not state a claim for [intentional infliction of emotional distress]."[144]

---

[139] *See White v. Monsanto Co.,* 585 So.2d 1205, 1207, 1209 (La. 1991).

[140] *White*, 585 So.2d at 1209; *Steadman v. South Central Bell Telephone Co*., 362 So.2d 1144 (La. App. 2 Cir. 1978).

[141] *White*, 585 So.2d at 1209; *see also Deus v. Allstate Insurance Co.,* 15 F.3d 506, 514 (5th Cir.), *cert. denied*, 513 U.S. 1014 (1994).

[142] *See Beaudoin v. Hartford Accident & Indemnity Co.,* 594 So.2d 1049 (La. App. 3 Cir. 1992) (supervisor's conduct of raising his voice, cursing and criticizing the employee's work over a period of about one year, resulting in emotional breakdown, not sufficient to constitute "outrageous conduct."); *Williams v. Worldwide Flight SVCS., Inc.,* 877 So. 2d 869, 19 A.L.R.6th 831 (Fla. Dist. Ct. App. 3d Dist. 2004) (supervisor's alleged conduct of calling the African-American employee a "nigger" and "monkey" and constantly threatening the employee with job termination for no apparent reason did not rise to the level that could be reasonably regarded as so extreme and outrageous so as to permit the employee to recover damages for intentional infliction of emotional distress.)

[143] *White.,* 585 So.2d at 1210.

[144] *Tisdale v. Woman's Hosp.*, 2006 WL 1877271 (5th Cir. July 6, 2006).

Plaintiff alleges that IP's actions of terminating him following his FMLA leave for non-excused absences amounts to "emotional distress." Plaintiff cannot recover for IIED because the alleged distress did not flow from a separate cause of action. Rather, Plaintiff's claim is directly linked to his claim for alleged FMLA retaliation and disability discrimination. Furthermore, as explained in *White*, the conduct at issue is not the type of conduct that rises to the level of IIED. There is no evidence that the alleged emotional distress suffered by Plaintiff was of the level of severe distress to support such a claim under Louisiana law.[145] Nor is there any evidence that IP desired to inflict severe emotional distress upon Plaintiff or knew that severe emotional distress would be certain or substantially certain to follow. Without evidence of these essential elements, Plaintiff's IIED claim should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the Court should grant IP's Motion for Summary Judgment and dismiss the claims filed by Plaintiff, with prejudice, and at Plaintiff's cost.

Respectfully submitted,

*/s/ Camille R. Bryant*
Magdalen Blessey Bickford (La. Bar No. 17472)
mbickford@mcglinchey.com
Camille R. Bryant (La. Bar No. 35063)
cbryant@mcglinchey.com
McGLINCHEY STAFFORD
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone:  (504) 586-1200
Facsimile:  (504) 596-2800

ATTORNEYS FOR DEFENDANT
INTERNATIONAL PAPER COMPANY

---

[145] *See Thompson v. Lane*, 2014 WL482622 at 11, M.D.L.A. September 30, 2014.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 12, 2021, a copy of this pleading was filed electronically with the

Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel

of record by operation of the court's CM/ECF system.

/s/*Camille R. Bryant*
CAMILLE R. BRYANT
