IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **JOHN PRICE** | * | **CIVIL ACTION NO. 5:19-CV-01362** |
| V. | * | **JUDGE TERRY A. DOUGHTY** |
| **INTERNATIONAL PAPER COMPANY** | * | **MAGISTRATE MARK L. HORNSBY**<br>**JURY DEMAND** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Milton Price ("Price") has sued his former employer. International Paper Company ("IP") for interfering with his rights under the Family Medical Leave Act ("FMLA") and retaliating against him in violation of the FMLA because he took intermittent leave. IP has moved for summary judgment on Mr. Price's claims. For reasons set forth below, IP's motion for summary judgment must be denied because there are disputed issues of fact concerning IP's right to require a medical release or fitness for duty from an employee returning to work from a use of intermittent leave and disputed issues of fact concerning whether or not IP's plant operations manager Chad Deas, retaliated against Mr. Price because Mr. Price was using FMLA.

**LAWS APPLICABLE TO INTERMITTENT FAMILY MEDICAL LEAVE**

The Family Medical Leave Act ("FMLA") provides job security to employees who must miss work because of their own illness. 29 U.S.C. § 2612(a)(1)(A)-(D). The FMLA entitles an eligible employee to 12 workweeks of leave with job security during a 12-month period because of a serious health condition that prevents the employee from performing the functions of his position. 29 U.S.C. § 2612(a)(1). An employee does not have to take continuous leave. He may take intermittent leave, in "separate blocks of time due to a single qualifying reason." 29 U.S.C. 2612(b); 29 C.F.R. § 825.202(a).

1

For intermittent leave, the increments of leave must be calculated "using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave, provided it is not greater than one hour and provided further that an employee's FMLA leave entitlement may not be reduced by more than the amount of leave actually taken." 29 C.F.R. §825.205 (a). Further, "[a]n employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent or reduced leave schedule." 29 C.F.R. §825.312(f). When an employee is on intermittent leave, the employer may obtain certification of fitness to return to duty once every 30 days, and only under certain conditions. *Id.* First, there must be a "reasonable safety concern"[1] regarding the employee's ability to perform his job duties. Second, the employer must have given the employee notice at the time it issues the designation of the leave that a fitness for duty or recertification will be required every 30 days (or some longer interval). *Id.* "The employer may not terminate the employment of the employee while awaiting such a certification of fitness to return to duty for an intermittent or reduced schedule leave absence." *Id.*

The FMLA not only protects an employee's right to be restored to his job. It also protects against having the FMLA absence counted against the employee for other employment purposes. "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c).

An employer is prohibited from interfering with, restraining or denying an employee's exercise of or attempted exercise of any right contained in the FMLA. 29 U.S.C. §2815(a)(1). Any

---

[1] "Reasonable safety concerns means a reasonable belief of significant risk of harm to the individual employee or others. In determining whether reasonable safety concerns exist, an employer should consider the nature and severity of the potential harm and the likelihood that potential harm will occur." 29 C.F.R. §825.312(f).

2

violations of the FMLA regulations constitute interference.  29 C.F.R. §825.220(b).   Interference includes "not only refusing to authorize FMLA leave, but also discouraging an employee from using such leave.  It would also include manipulation by a covered employer to avoid responsibilities under FMLA." *Id*.  An interference claim is based upon a denial of an employee's substantive right under the FMLA and thus can be proven without establishing the employer's discrimination. See *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)

**Applicable Law and Disputed Material Fact**

1. <u>INTERFERENCE AND FAILURE TO RETURN TO WORK</u>

The parties do not dispute that Mr. Price was an eligible employee under the FMLA.  The dispute concerns the termination of Mr. Price's employment, an adverse employment action triggered by two partial attendance occurrences / early outs on July 20, 2018 and August 7, 2018.  At the core of the dispute is IP's insistence upon treating Mr. Price' FMLA as continuous leave, approved only for specific dates, rather than the intermittent leave Mr. Price requested.

Mr. Price left work early on July 20, 2018, because he had become ill. [Ex. 2, Ex. 3].   He requested and was approved for intermittent FMLA (the Third FMLA leave). Ex. 2.   July 20 was the first partial day absence under the Third FMLA leave.   The second partial absence for which Mr. Price was penalized was  August 7, 2018, his first day back at work following his <u>first</u> use of intermittent leave under the Third FMLA leave request. IP's Operations Manager, Chad Deas, sent Mr. Price home early that day because Mr. Price did not submit a doctor's note certifying his fitness to return to work immediately upon his return to work from intermittent leave.  Because the employer did not approve these two partial absences as covered under the Third FMLA leave, Mr. Price was given attendance occurrence points.  This caused him to exceed the allowable

3

number of attendance infractions. His employment was terminated for that reason on August 24, 2018, less than one month following the Third FMLA intermittent leave certification.

### IP Interfered with Mr. Price's right to Intermittent Leave

IP treated Mr. Price as if his Third FMLA had been continuous leave, beginning July 23, 2018 and concluding August 6, 2018. However, the medical certification Mr. Price submitted requested <u>only</u> intermittent leave. It is undisputed that Mr. Price's Third FMLA leave request was granted. The dispute concerns IP's attempt to impose upon Mr. Price the return-to-work conditions applicable to continuous leave, but not intermittent leave.

Once Mr. Price submitted a medically supported request for intermittent leave, the employer could not substitute continuous leave. See 29 U.S.C. § 2612(a)(1)(D), (b)(1). *See also Verhoff v. Time Warner Cable, Inc.*, 478 F. Supp. 2d 933, 941 (N.D. Ohio 2006) (finding that employer that provided continuous FMLA leave to employee nevertheless interfered with FMLA right by failing to provide intermittent leave when employee met statutory conditions).

By subjecting Mr. Price to the return-to-work conditions applicable to continuous leave, outlined in 29 C.F.R. §825.312(a), rather than the return-to-work conditions specifically applicable to intermittent leave in 29 C.F.R. §825.312(f), IP effectively denied Mr. Price's request for intermittent leave and impermissibly imposed continuous leave.

### The partial absence on July 20, 2018, should have been covered as intermittent leave.

There is a disputed issue of fact regarding whether or not Mr. Price's absence from work on July 20, 2018, should have been covered as a use of intermittent leave. It is undisputed that Mr. Price worked a partial shift and left early due to illness that day, a recurrence of his prior leave-qualifying symptoms. Mr. Price had only recently returned from his Second FMLA Leave, ending

4

July 16, 2018.   When he became ill on July 20, 2018, he reported the illness to his employer prior to leaving work.

Mr. Price applied for Family Medical Leave, specifically requesting that the leave begin July 19, 2018 and encompass the partial workday of July 20, 2018.  On the Employee's Family and Medical Leave Request Form, Mr. Price was asked to "Describe the length of leave you're requesting and  you're using and your usual work schedule."   Mr. Price entered the dates July 19, 2018 through July 28, 2018. [Ex. 2].   Contrary to IP's contention, Mr. Price did not fail to request FMLA intermittent leave coverage for absence on July 20, 2018. That day was expressly covered in Mr. Price's Leave Request Form.

29 C.F.R. §825.205  addresses leave increments, stating that:

> When an employee takes FMLA leave on an intermittent or reduced leave schedule basis, the employer must account for the leave using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave provided that it is not greater than one hour and provided further that an employee's FMLA leave entitlement may not be reduced by more than the amount of leave actually taken.

IP's policies allow employees to take leave in increments of partial days and hours for jury duty and funeral leave. [Ex. 1]   There was no valid justification for IP to deny Mr. Price intermittent leave for the day he had to leave work early on July 20, 2018.  It is undisputed that Mr. Price submitted his Third FMLA leave request on July 23, 2018. Mr. Price did request that the partial absence on July 20, 2018 be covered in that FMLA period and he provided a narrative explanation of the reason it should be included as the first day of the Third FMLA leave period. [Ex. 2]

Mr. Price's physician, Dr. Poch, submitted a medical certification report in support of Mr. Price's Third FMLA leave request certifying that he had seen Mr. Price multiple times within the prior 12 months for the same problem and specifically he had treated him June 21 and July 25, 2018. [Ex. 2]   This medical certification, combined with Mr. Price's narrative description of

the onset of his illness and IP's preliminary entry in its attendance records that Mr. Price had been at work and had left early due to illness, create a genuine issue of material fact as to whether or not IP's decision to exclude FLMA protection for this partial workday interfered with Mr. Price's FMLA rights.

<u>IP should not have penalized Mr. Price for the partial absence on August 6, 2018</u>.

It is undisputed that on his first day back at work following his first use of intermittent leave under the Third FMLA leave certification, Mr. Price was forced to take an "early out" and sent home with instructions not to return to work without a medical release.

With regard to Mr. Price's "early out" on August 7, 2018, Joe Woodall, a member of the August 24, 2018 Guidance Committee testified as follows:

> Q. If he [Mr. Price] had not left early that day, would he have been terminated.
> A. No.
> A. Because there wouldn't have been a committee meeting.
> Q. Right. There would be no issue for termination.
> A. Right.

IP cites 29 C.F.R. 825.312(a) in support of its contention that it had a right to request a physician's release from Mr. Price because it had a uniform policy requiring it and that it had a corresponding right to deny FMLA coverage to this partial absence and to refuse to restore him to his position because he failed to provide a work release when he returned to work on August 7, 2018. IP's argument ignores the fact that section 825.312(f) prohibited it from demanding that Mr. Price submit a doctor's release to return to work from intermittent leave.

29 C.F.R. 825.312(f) states that "[a]n employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent or reduced leave schedule." This regulation makes limited exceptions, none of which apply here.[2]

The period of July 20 through August 7, 2018 was Mr. Price's first use of intermittent leave under the Third FMLA leave approval. The exception permitting an employer to request a return-to-work release does not apply to the first use of intermittent leave. Section 825.312(f) permits such requests only for "subsequent use" of intermittent leave under the leave approval.

Even a request after "subsequent use" is not permitted unless the employer has informed the employee "at the same time it issues the designation notice" to the employee that a fitness for duty will be required for "each subsequent use." IP does not allege, and has no evidence, that it submitted notice to Mr. Price "at the same time as it issued[ed] the designation notice" that it would require Mr. Price to have a work release.[3] IP relies entirely upon its policy in its handbook and a general explanation in documents that are clearly not the designation notice.

Regardless, IP is not permitted to request that an employee on intermittent leave re-certify fitness for duty any more frequently than once every 30 days. The Third FMLA leave period began no earlier than July 20, 2018. The 30-day period had not expired when IP required Mr. Price to provide a doctor's release to return to work on August 7.

The cases IP cited in support of its motion for summary judgment, *Acker v. General Motors*, 853 F. 3d 784 (5th Cir. 2017) and *Greenwell v. State Farm Ins. Co.*, 486 F. 3d 840 (5th Cir. 2007) are not applicable to this case. *Acker* and *Greenwell* involved employees who did not give

---

[2] For example, an employer may request certification of fitness for duty when there is a reasonable concern that the employee's leave-qualifying condition presents a safety concern. IP has not made that allegation and there is no evidence of it. Section 825.312(g) permits a return-to-work medical authorization for intermittent leave absences when the employer and union have agreed to the conditions in a collective bargaining agreement. That does not apply here.

[3] 29 C.F.R. §825.310 requires the employer to designate the dates of work missed that are covered under the FMLA and to notify the employee of the designation.

timely notice of a request that absences they had taken were connected to and covered by their approved intermittent leave. Mr. Price gave prompt notice of his request to have his partial absence during his July 19-July 20 shift covered under this Third Leave Request. Further, *Acker* involved an employee covered under a collective bargaining agreement. 29 CFR 825.312(g) provides an exception that allows an employer to request a fitness for duty at intervals of less than 30 days when the collective bargaining agreement allows it. There is no applicable provision of a collective bargaining agreement in this case.

IP based its demand for work release on its handbook rules. IP had no articulated safety concern for Mr. Price. Further, a work release for intermittent leave was premature. Mr. Price had only been certified for intermittent leave under the Third FMLA leave for less than two weeks.

IP should not have penalized Mr. Price for the partial absence on the day it sent him home from work because he did not have a work release from his doctor.[4] But for that occurrence, there would have been no guidance committee meeting and no issue for termination.

<u>IP Interfered with Mr. Price's FMLA rights by failing to reinstate him.</u>

A fundamental right under the FMLA is the employee's right to be restored to his job when he returns from Family Medical Leave. IP did not reinstate Mr. Price when he returned from his first use of intermittent leave under the Third FMLA leave. IP refused to let him work and sent him home early because he had not produced a medical work release. This work release was not required. Price was not reinstated. His right to reinstatement following a use of intermittent leave was denied.

---

[4] IP argues that after leaving the plant Mr. Price had lunch with his wife before he obtained the doctor's release. Mr. Price explained that the doctor's office was closed during lunch and he had to wait for it to reopen before he could request the work release.

<u>Regulations Prohibited IP from firing Price due to a delayed Return to Work Release</u>

Even if IP had been permitted to obtain a return-to-work release from Price's physician when he returned to work following his first use of intermittent leave under the Third FMLA leave, IP was prohibited from firing Price while it waited for the work release.  Because IP counted the partial absence as an attendance occurrence and used this to terminate Price, IP essentially fired Price because of the delay in obtaining a work release.

29 C.F.R. §825.812(f) states in relevant part:

> The employer may not terminate the employment of the employee while awaiting such a certification of fitness to return to duty for an intermittent or reduced schedule leave absence.

This regulation clearly prohibits the employer from penalizing the employee for an absence attributable to time spent waiting for the return-to-work release.

2. <u>RETALIATION</u>

IP manifested retaliatory animus toward Mr. Price because Mr. Price had taken FMLA. This retaliatory animus is manifest in the email of August 7, 2018, from IP Operations Manager Chad Deas to the plant Human Resources Generalist and Mr. Price's supervisors. [Pl. Ex. 3, IP 00381]   Questioning whether or not Mr. Price had been medically cleared to return to work and the lack of work releases in Mr. Price's FMLA file, Mr. Deas stated:  "Keep in mind he never had one, and we all know how many days have been missed."  Several IP employees testified that absenteeism at the plant was a problem which frustrated plant managers. See Def. statements of fact 97-98.  These facts provide a motive for IP to manufacture a reason to terminate an employee who has taken FMLA three times and is seeking to use FMLA intermittent leave.

## CONCLUSION

IP's motion for summary judgment must be denied. Disputes exist regarding the designation of Mr. Price's Third FMLA leave as continuous or intermittent and whether or not that leave should have begun July 30. Disputes exist regarding whether or not IP was entitled to a medical certification of Mr. Price's fitness to return to work on August 6, whether or not IP could delay Mr. Price's reinstatement because he did not have a medical work release on August 6, and whether or not IP could send Mr. Price home and penalize him for the absence because he did not have a medical work release on August 6. Further, there is a dispute over whether or not IP Operations Manager Chad Deas retaliated against Mr. Price because Mr. Price was using Family Medical Leave.

Respectfully Submitted,

   /S/Pamela R. Jones
Allison A. Jones, Bar No. 16990 - LEAD
Pamela R. Jones, Bar No. 19640
DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
E-mail: ajones@dhw-law.com
E-mail: pjones@dhw-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2021, a copy of the foregoing Plaintiff's Memorandum in Opposition to Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF filing system. Notice of this filing will be sent to all parties of record by operation of the court's electronic filing system.

By:    /s/ Pamela R. Jones
       ATTORNEY FOR PLAINTIFFS