UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN PRICE                                    CASE NO.  5:19-CV-01362

VERSUS                                        JUDGE TERRY A. DOUGHTY

INTERNATIONAL PAPER COMPANY        MAGISTRATE JUDGE MARK L.
                                              HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 17], filed by Defendant
International Paper Company, ("IP") on February 12, 2021.  Plaintiff John Price ("Price") filed an
Opposition ["Doc. No. 22] on March 15, 2021, and IP filed a Reply [Doc. No. 24] on March 22,
2021.

For the reasons set forth herein, IP's Motion for Summary Judgment is GRANTED.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

On October 17, 2019, Price filed a Complaint against IP alleging claims under the Family
Medical Leave Act ("FMLA"), under the American with Disabilities Act ("ADA") and an
unspecified Louisiana state law claim.  Specifically, Price alleges the following causes of action:

   a)  Failure to provide Price with his rights under the FMLA;

   b)  Interfering with Price's rights under FMLA;

   c)  Failing to reinstate Price following FMLA leave;

   d)  Retaliating against Price for requesting leave under FMLA;

   e)  Retaliating against Price as a result of his leave under FMLA;

   f)  Discrimination due to disability and/or being regarded as disabled under the ADA; and

g)  Presumably state law claims for damages as a result of anxiety, mental anguish, mental suffering, humiliation, embarrassment, damage to reputation and economic and emotional distress because of IP's alleged conduct.

Price was hired by IP in 2011 to work at the Mansfield Mill as a trainee.  Price worked his way up from trainee to Wet-End Assistant which is the eyes and ears of the control room.[1]  There is no dispute that during his first few years at IP, Price had no disciplinary problems.

IP maintains Price was terminated on August 30, 2018, due to missing work in violation of IP's Attendance Policy.  IP maintains the Mansfield Mill had a no-fault attendance policy which required that if an employee is sick and the illness is not covered by FMLA or Other Medical Leave ("OML"), the absence counts as an "occurrence".[2]

Specifically, IP maintains Price had the following seven "occurrences" within a 12-month period:

11/28/2017 – Sick

12/22/2017 – Unexcused absence (left 6 hrs. 30 minutes early)

07/21/2018 – Unexcused absence

04/13/2018 – Unexcused absence (left work early)

04/24/2018 – No call/No show

07/20/2018 – Unexcused absence (left 4 hrs. early)

08/07/2018 – Unexcused absence (left 10 hrs. 45 minutes early)

IP also points to previous attendance issues which resulted in discipline to Price.  Price had occurrences on January 16, 2014, April 19, 2014 and a third on May 2, 2014.[3]  Since the Mansfield

---

[1] Exh A, Price Depo 20-21
[2] Exh A, Price Depo, Exh 12 Employee Handbook
[3] Exh K, Bates No. IP 000144

Mill's attendance policy required the appointment of a Guidance Committee after three occurrences within a six-month period, a Guidance Committee was appointed to address these issues with Price.  After investigating the matter by interviewing Price, witnesses and reviewing other information, the Guidance Committee recommended Price receive informal coaching for the first two occurrences and then Price be placed on "full restrictive rights" for the third occurrence[4]. The Guidance Committee's recommendations were approved by Human Resources and the Plant Manager.[5]

On June 21, 2017, Price was a no call/no show for a scheduled training day.  A Guidance Committee again investigated this occurrence and recommended a written warning, which was also approved by Human Resources and Management.[6]

Price took three approved FMLA leaves on the following dates:

December 25, 2017-January 20, 2018;

May 8, 2018 – July 16, 2018; and

July 23, 2018 – August 6, 2018

IP maintains the seven occurrences within 12 months were not on dates covered by the days Price was approved for FMLA leave.  Price maintains that two of the occurrences (7/20/2018 and 8/7/2018) were covered by FMLA and should not have been counted against him as occurrences.  Price maintains he was granted "intermittent" FMLA leave, rather than "continuous" FMLA leave as argued by IP.  Price states that had these two dates not been counted against him, he would not have been terminated.

---

[4] Id.
[5] Exh A, Price Depo Exh 12
[6] Exh B, Woodall Depo 57

Price argues he left work early on July 20, 2018 because he had become ill and that July 20, 2018 should have been counted as the first partial day under the third FMLA leave.  Price also maintains the August 7. 2018 occurrence was his first day back to work following his use of what he maintains was intermittent leave and that it should also have been covered by FMLA leave. Price also maintains IP interfered with his right to intermittent leave by imposing upon him return-to-work conditions applicable to continuous leave, by requiring him to obtain a medical certification to return to work.

IP argues the FMLA leaves granted to Price were "continuous", not "intermittent" leave. IP's reasons for terminating Price were based upon the previous discipline for occurrences and culminating with the seven occurrences occurring between November 28, 2017 and August 8, 2018.  Price doesn't contest the five occurrences from November 28, 2017 through April 24, 2018 but does contest the last two (July 20, 2018 and August 7, 2018), claiming they should have been counted as part of his intermittent leave.

After the August 7, 2018 occurrence, a Guidance Committee was convened on August 24, 2018, to discuss Price's seven attendance occurrences within a 12-month period, in accordance with IP's attendance policy.[7]  Price did not offer any explanation for the occurrences and the Guidance Committee recommended termination.[8]  Human Services approved the Guidance Committee's recommendation and Price was sent a termination letter on August 30, 2018.[9]  IP maintains Price was disciplined seven times for his attendance and no call/no show violations.

## II.    LAW AND ANALYSIS

---

[7] Exh A, Price Depo Exh 9
[8] Id.
[9] Exh A, Price Depo. Exh 8

4

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.,* 37 F.3d 1069,

1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

### B.    Americans With Disabilities Act

Price alleged that IP discriminated against him in violation of the ADA.  Absent direct evidence of discrimination, a plaintiff must make a prima facie case of discrimination under the ADA by showing he (1) has a disability, was regarded as disabled, or has a record of disability; (2)  was qualified for the job; (3) was subjected to an adverse employment decision on account of his disability, and (4) was replaced by or treated less favorably than non-disabled employees. *EEOC v. Chevron Phillips Chem. Co., L.P*., 570 F.3d 606, 615 (5th Cir. 2009).

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;  (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. 12102(1).

Price has neither proven nor argued that he has a "disability" under the ADA.  Price's argument that he took "intermittent", rather than "continuous" FMLA leave also supports the

conclusion that Price does not have an ADA disability.  Since Price has not been able to prove a disability, there is no reason to address the other three factors.

IP is entitled to summary judgment on Price's ADA claim.

### C.  State Law Claims

Price alleged in his Complaint that he further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under the state law.  Although no specific causes of action under state law were alleged, Price alleged that he has suffered anxiety, mental anguish, mental suffering, humiliation, embarrassment, damage to his reputation and has suffered both economic and emotional distress due to IP's conduct.

No argument has been made by Price in his opposition as to any state law claims.  IP addressed the potential claim as possibly alleged intentional infliction of emotional distress ("IIED").

To recover for the tort of IIED, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous;  (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain to result from his conduct.  *White v. Monsanto Co.* 585 So.2d 1205, 1207, (La. 1991).

The allegations against IP do not meet this standard.  No state law claims were briefed or addressed by Price.  This claim has also prescribed under La. CC article 3492's one-year prescriptive period.  The alleged actions occurred on or before August 30, 2018 and the complaint was not filed until October 17, 2019.  IP is also entitled to summary judgment on any alleged state law claims.

### D.  Family Medical Leave Act

7

Price's claims under the FMLA are more complicated.  Price alleges four claims against IP under the FMLA:  (a) failure to provide Price with  his rights under the FMLA;  (b) interfering with Price's rights under the FMLA;  (c) failure to reinstate Price following FMLA leave; and (d) retaliating against Price as a result of his leave under FMLA.

The FMLA requires covered employers to provide up to 12 weeks of unpaid leave to any eligible employee who suffers from a "serious health condition" that makes the employee unable to perform the functions of the position of such employee.  After a qualifying absence, the employer must restore the employee to the same position or position comparable to that held by the employee before the leave.  An employer may not "interfere with, restrain or deny the exercise of … any right provided under" the FMLA.  Thus, employers have a prescriptive obligation under the FMLA – they must grant employees substantive rights guaranteed by the FMLA – and they have a proscriptive obligation – they may not penalize employees for exercising these rights.[10]

### (a) Failure to Provide Price with Rights Under FMLA

Price alleges in his Complaint that IP failed to provide him with his rights under the FMLA, a prescriptive obligation.  Price makes no argument and provides no evidence supporting this claim.

IP provided evidence that when Price took FMLA leave on December 25, 2017, Price was provided notice of his rights and responsibilities under the FMLA through the employee handbook, OSHA training, and Sedgwick paperwork, which included the notice form provided by the Department of Labor.[11]  Additionally, in the Employee Handbook, Price's rights under the FMLA

---

[10] *Chaffin v. John H. Carter Co., Inc.* 179 F.3d 316, 319 (5th Cir. 1999)
[11] Exh A Price Depo 126, 132-139; Exh C Cylie Price Depo 876 106

were contained, including his right to take leave intermittently or on a reduced schedule whenever necessary.[12]

IP is entitled to summary judgment on this claim.

### (b) Failure to Reinstate Price Following FMLA Leave

Price maintains IP did not reinstate him when he returned from his third FMLA leave. Price argues IP refused to let Price work when he returned from his third FMLA leave on August 8, 2018, and sent Price home early to obtain a medical work release, which Price maintains is not required when returning from intermittent leave. Price also argues that because IP counted as an "occurrence" the time he spent obtaining a medical work release, he was essentially fired because of the delay in obtaining the work release.

Price also cites 29 C.F.R. 825.812(f) for a prohibition against terminating an employee while awaiting a certification of fitness to return to duty for an intermittent leave absence. Price argues that there is an issue of fact whether he took "continuous" or "intermittent leave, so summary judgment should be DENIED on this issue.

IP argues Price's third FMLA leave was "continuous" not "intermittent" leave and in accordance with IP's written policies, Price was required to submit a Return-to-Work release when he returned from continuous leave. Additionally, IP maintains this claim should be dismissed because Price was reinstated after all three FMLA leaves, including the third one. IP points to Price's deposition testimony,[13] in which Price admits he was reinstated after he returned from his third FMLA leave (on August 7, 2018), [14] and was not terminated until August 30, 2018, after the Guidance Committee's recommendation.

---

[12] Exh A, Price Depo Exh 12
[13] Exh A, Price Depo 150
[14] There is a dispute whether Price returned to work on August 6 or August 7, 2018, but the specific date is not a material issue of fact.

This Court finds IP is also entitled to summary judgment on this issue.  Price was reinstated all three of his FMLA leaves, including the third.  Additionally, for reasons set forth further herein, this Court finds Price took "continuous", not "intermittent" leave which is an additional reason IP is entitled to summary judgment on this claim.

### (c) Interfering with Price's Rights Under the FMLA

Price was terminated on August 30, 2018, after a Guidance Committee recommendation due to Price having seven occurrences within one year, in accordance with IP's Attendance Policy. The last two "occurrences" that were counted by IP were on July 20, 2018, and on August 7, 2018. Price took his third approved FMLA leave from July 23, 2018 to August 6, 2018.  Since the last two occurrences were just before and just after Price's third FMLA leave, Price maintains he took "intermittent", rather than "continuous" FMLA leave and these two dates (July 20, 2018 and August 7, 2018) should have been counted as part of his third FMLA leave, and not counted as "occurrences."  There is no dispute that the last two occurrences triggered the Guidance Committee being appointed, which recommended termination based upon Price's seven "occurrences" within a 12-month period.[15]

Price argues he left work early on July 20, 2018 because he had become ill.  He then requested and was approved for FMLA leave (third FMLA leave) and was out until Price returned on August 7, 2018.  IP Operations Manager, Chad Dees, send Price home early that day because Price did not submit a doctor's note clarifying his fitness to return to work immediately upon his return to work from leave.  The partial absences on July 20, 2018 and August 7, 2018 were not approved by IP under his third FMLA leave, which resulted in two attendance "occurrences", which caused him to exceed the required number of attendance infractions.  This caused the

---

[15] Exh A, Price Depo Exh 9

Guidance Committee to be appointed, which ultimately resulted in his termination.   Price maintains by subjecting Price to the Return-to-Work conditions applicable to continuous leave, instead of intermittent leave, IP interfered with Price's rights under FMLA.

IP argues that the important point is that Price was terminated as a result of IP's Attendance Policy and was not fired as a result of taking FMLA leave.   IP also argues that Price took "continuous", not "intermittent" leave, from July 23, 2018 to August 6, 2018 and therefore, there was no interference with Price's rights under the FMLA.

IP also argues that Price did not notify IP of his intention to take leave on July 20, 2018, or on August 7, 2018, which he is legally required to do.[16]   IP also maintains Price was clearly advised as part of his May 10, 2018 corrective action, that any future attendance issues or no call/no show would likely result in termination.[17]  Also, IP maintains Price failed to notify Sedgwick of the July 20 and August 7, 2018 absences as FMLA absences in accordance with the IP Attendance Policy.

On the July 20, 2018 date, Price submits his Employee's Family and Medical Leave Request Form[18] which requested a start date of July 19, 2018, and an end date of July 28, 2018. This would include the July 20, 2018 date, but not the August 7, 2018 date.  However, the Treating Physician/Health Care Provider Certification Form[19] showed Price's treating physician, Dr. Arthur Poch, certified the start time as July 31, 2018, which would have been after the July 20, 2018 date in question.

---

[16] 29 U.S.C. 2612(e)(1)(2) and 29 C.F.R. 825.303
[17] Exh K, Price Depo 372-374
[18] Doc No. 22, Exh 2A
[19] Doc No. 22, Exh 2

11

Price makes no argument that he notified IP of his intention to take August 7, 2018, as FMLA leave.  This Court believes this evidence shows IP is entitled to summary judgment on this issue whether or not the leave was considered "intermittent" or "continuous".

In a claim that the employee's rights under FMLA have been interfered with, restrained or denied, the Plaintiff bears the burden of proving that (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him benefits to which he was entitled. *DeVoss v. SW Airlines Co*., 903 F.3d 487, 490 (5th Cir. 2018).

Price is not contesting any of his occurrences, except the ones occurring on July 20, 2018 and on August 7, 2018.  The above evidence shows that he was not certified by his treating physician, Dr. Poch for the July 20, 2018 date, and that Price never gave notice of his intention to claim the August 7, 2018 date under FMLA.  For these reasons, IP's summary judgment should be granted on this claim.[20]

For completeness, this Court will also address the issue of whether Price's third FMLA leave was "continuous" or "intermittent".  As discussed, this Court believes IP is entitled to summary judgment on this issue, whether or not the leave was intermittent or continuous.

The FMLA secures a right for leave related to a health condition to be take intermittently or as a reduced leave schedule when medically necessary.[21]   29 C.F.R.  825.202 discusses intermittent leave.  It defines "intermittent leave" as "FMLA leave taken in separate blocks of time due to a single qualifying event".[22]  It also gives an example of intermittent leave as "leave taken

---

[20] *See Acker v. General Motors*, 853 F.3d 784 (5th Cir. 2017) and *Greenwell v. State Farm Mut. Auto Ins. Co.,* 486 F.3d 840 (5th Cir. 2007).

[21] 29 U.S.C. 2612(b)(1)
[22] 29 C.F.R. 825.202(a)

on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy."[23]

Price's absence was not taken several days at a time, but from July 23, to August 6, 2018, 16 straight days.  The Sixth Circuit has interpreted a period of intermittent leave to "comprise periods….in which the employee is present at work."[24]  Price was not present at work between July 23, 2018 and August 6, 2018.

Price took continuous leave, not intermittent leave, and IP was within its rights to require Price to submit a doctor's certification as to Price's fitness to return to work.  IP is also entitled to summary judgment on this claim.

### (d) Retaliating Against Price as a Result of His FMLA Leave

Price maintains IP fired him as a result of him taking FMLA leave.  The evidence submitted by Price to support this claim is an August 7, 2018 email[25] from IP Operation Manager Chad Dees to Human Resources which stated the following:

> "Brock and I just met with Milton and explained to him the requirements.  We sent him out to get a return to work from his doctor.  We have followed up with John Simpson, he should not have allowed Milton to work without a return to work.  Keep in mind he has never had one and we all know how many days have been missed."

Since Price lacks direct evidence of FMLA discrimination or retaliation, the *McDonald Douglas* burden-shifting from work applies.[26]  The Plaintiff bears the initial burden to establish a prima facie case of retaliation under the FMLA.[27]  To establish a prima facie case under the FMLA, a plaintiff must show:  (1)  he was protected under the FMLA;  (2) he has suffered an adverse

---

[23] 29 C.F.R. 825.202(b)(1)
[24] *Davis v. Michigan Bell Telephone Co.*, 543 F.3d 345, 350 (6th Cir. 2018)
[25] Doc. No. 22, Exh 3
[26] *Harrelson v. Lufkin Industries, Inc*. 614 Fed. Appx. 761, 763 (5th Cir. 2015)
[27] Id.

employment action; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse action was made because he sought protection under the FMLA.[28]

Once the Plaintiff has established a prima facie case of retaliation, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action.[29] The burden then shifts back to the employee to prove that the stated reason is merely a pretext for illegal discrimination.[30]

IP concedes (for purposes of this summary judgment) that Price can establish the first two prongs of his prima facie case, but is unable to establish the third – that he was treated less favorably than an employee who had not requested leave or that his termination was because he sought protection under the FMLA.  This Court agrees.

IP documented its written Attendance Policy, which was uniformly applied.  The evidence shows Price was terminated (at the recommendation of a Guidance Committee), after seven absence related "occurrences" which occurred within 12 months, which is set out in IP's Attendance Policy.  Price has not proven that his termination was because he sought protection under the FMLA.

However, even if Price had made a prima facie case under the FMLA, IP has certainly established a non-discriminatory reason for Price's termination – a violation of IP's Attendance Policy.  IP's policy was written, and uniformly applied.  When Price had his seventh occurrence, a Guidance Committee was appointed, and Price was recommended to be terminated.  It is undisputed that Price violated the terms of IP's Attendance Policy.

---

[28] *Mauder v. Metro Transit Auth. Of Harris Cty., Tex., 446 F.3d 574 (5th Cir. 2006)*
[29] Id.,
[30] Id.

Price is unable to demonstrate that the reason for his termination was a pretext for retaliation.  A plaintiff may establish pretext either through (1) evidence of disparate treatment or (2) by showing that the employer's preferred explanation is false or unworthy of credence.[31]

Price cannot prove pretext.  Although he thought Joe Woodall was out to get him, Price admitted he had no evidence to that effect.[32]  The email from Chad Dees fares no better for Price. Everything said in the email was true – a back to work certification was required, and Price had a lot of absences.  Therefore, the email was not false, and Price has been unable to prove that Deas was not worthy of credence.  Dees didn't fire Price.  Price was fired at the recommendation of a Guidance Committee after Price was given an opportunity to explain his position.

Price's termination was 23 days after the seventh attendance occurrence on August 7, 2018. Even if this is "temporal proximity" between the leave and the termination, temporal proximity alone cannot be sufficient proof for causation.[33]

IP is also entitled to summary judgment on this claim.

## III.  CONCLUSION

For the reasons set forth herein,

The Motion for Summary Judgment [Doc. No. 17] filed by International Paper Company is **GRANTED**. Plaintiff's claims against Defendant are hereby **DISMISSED** with prejudice.

MONROE, LOUISIANA, this 29th day of March, 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[31] *DeVost v. SW. Airlines Co.,* 903 F3d 487, 492 (5th Cir. 2018)
[32] Exh A, Price Depo 245
[33] *Strong v. University Healthcare*, 482 F.3d 802 (5th Cir. 2007)

15